UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | * | |
| Plaintiff, | * | CASE NO. 8:14-cv-00648-PJM |
| v. | * | |
| **JOHN DOE subscriber assigned IP address 69.255.0.42,** | * | |
| | * | |
| Defendant. | * | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH THE SUBPOENA OF MALIBU MEDIA, LLC SEEKING IDENTITY INFORMATION

### I. INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion because Defendant has not provided a valid reason to quash the subpoena under Fed. R. Civ. P. 45. Indeed, merely denying involvement with the infringement is not adequate grounds to quash the subpoena. Further, this Court has already taken significant procedural safeguards to ensure that Defendant is not publically identified.

Federal courts have consistently permitted copyright owners to identify Doe Defendants through a Rule 45 subpoena, and two Federal Circuit Courts have held that Rule 45 subpoenas are permissible. Here, a ruling to the contrary would undermine the rights of copyright owners by denying them the tools necessary to identify on-line infringers. Without the ability to identify on-line infringers, suits cannot be brought and rights cannot be enforced. For these reasons, as more fully explained below, Plaintiff respectfully requests that the Court deny Defendant's motion so that it may identify the John Doe Defendant.

1

II. **FACTS**

   A. <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* CM/ECF 4-2 at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id*. at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent. *Id*. at ¶ 19. Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id.* at ¶ 27. Despite sending thousands

of DMCA notices per week, the infringement continues. *Id*. at ¶ 28. And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free. *Id*. Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified. Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013). Last June, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *See Id*. In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*." Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

> B. <u>Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original). Similarly, the Honorable Judge Hegarty of the District of Colorado has stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

3

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

    C. <u>The Infringer</u>

Defendant's Internet was used to infringe twenty-one (21) of Plaintiff's copyrighted works between June 9, 2013 and January 18, 2014. *See* CM/ECF 1-2. Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of several months. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby. Indeed, it was someone with access to Defendant's Internet for a long period of time, consistently.

**III.    THIS COURT SHOULD NOT QUASH THE SUBPOENA**

Just recently, the Honorable Judge Bredar ruled on near identical issues before this Court, denying a Defendant's motion to quash.

4

> The Defendants have standing to contest the subpoenas to the third party, but their ultimate arguments relate to proof of wrongdoing, or lack thereof. The Plaintiff is not required to prove its contentions at this stage. It has presented colorable claims that each of the Defendants have illegally downloaded Plaintiff's copyright-protected product. Plaintiffs are entitled to move forward to the next stage in this litigation.

*Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 6577039 (D. Md. Dec. 12, 2013).

Fed. R. Civ. P. 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. *See Fed. R. Civ. P. 45(c)(3)(A)(i-iv)*. The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. *See Fed. R. Civ. P. 45(c)(3)(B)(i-iii)*. "No other grounds are listed." *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at *2 (D. Colo. 2013) (denying motion to quash in similar BitTorrent copyright infringement action where defendant's motion failed to articulate a reason to quash the subpoena that complied with Rule 45). Here, Defendant fails to make any argument under Fed. R. Civ. P. 45 as to why the subpoena should be quashed.

A. <u>A Denial of Infringement Is Not a Valid Reason to Quash a Subpoena</u>

Defendant's motion to quash is based solely on a denial. Denials of infringement are not a basis to quash the subpoena and are premature at this point in the litigation process. *See Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 35 (D.D.C. 2011) ("A general denial of engaging in copyright infringement is not a basis for quashing the plaintiff's subpoena.") The Court in *Voltage* noted that general denials of liability were not a basis to quash a subpoena and prevent Plaintiff from learning the identity of the subscriber of the IP address. If this were the

5

case, Plaintiff would be denied critical information necessary in order to address the merits of the claim.

> It may be true that the putative defendants who filed motions and letters denying that they engaged in the alleged conduct did not illegally infringe the plaintiff's copyrighted movie, and the plaintiff may, based on its evaluation of their assertions, decide not to name these individuals as parties in this lawsuit. On the other hand, the plaintiff may decide to name them as defendants in order to have an opportunity to contest the merits and veracity of their defenses in this case. In other words, if these putative defendants are named as defendants in this case, they may deny allegations that they used BitTorrent to download and distribute illegally the plaintiff's movie, present evidence to corroborate that defense, and move to dismiss the claims against them. <u>A general denial of liability, however, is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information.</u>

*Id.* (Emphasis added.); *see also Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. 2012).

Here, Defendant claims he was on a flight during the last instance of infringement, but that does not account for the 20 other infringements that were made with his IP address. Further, Plaintiff has no way of knowing whether Defendant actually was on the flight, or if the flight was delayed, or if someone else in Defendant's home was using his IP address to commit the infringements and Defendant knows the identity of that person.

B. <u>Plaintiff Must Obtain the Subpoena Response From Defendant's ISP to Protect its Copyrights</u>

Without the identifying information of the internet subscriber who used Defendant's IP address to violate Plaintiff's copyrights, Plaintiff has no other way to protect its copyrights against pervasive anonymous online infringement. *See e.g. Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 at *5 (N.D. Ill. 2013) (denying motion to quash).

> The Court agrees with Malibu. If the Court were to quash the subpoena as the Putative Defendants urge, <u>it would be *impossible* for Malibu to protect its copyright against internet infringers</u>. Furthermore, the Putative Defendants do not contest Malibu's argument that "the *only* way to enforce one's copyrights against

6

online infringement is to subpoena the identity of the subscriber whose internet [connection] was used to commit the infringement." Even if, as the Putative Defendants contend, someone else used their internet connections to copy and distribute Malibu's films, <u>the identity of IP address holders is relevant to Malibu's claims: it can provide a useful starting point for identifying the actual infringer</u>. Thus, the Court finds that <u>the relevance of the IP address holders' identity outweighs the burden of its subpoena</u>.

*Id.* (Citations omitted, emphasis added.)

Even if the subscriber is not the infringer, Rule 26 of the Federal Rules of Civil Procedure provides for broad discovery. Rule 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. 2012) (holding that although the subpoena may only identify the subscriber and may not reveal the infringer's identity, the subpoenas are a proper use of discovery.). *See also e.g. Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 at *9 (E.D. Pa. 2012) (denying motion to quash subpoena in similar BitTorrent copyright infringement case holding that the relevancy standard was satisfied); *Malibu Media, LLC v. John Does No. 1-30*, 2012 WL 6203697 at *4 (D.N.J. 2012) (same). "Relevance is a broad concept at the discovery phase . . . The identity of the customers associated with the Alleged IP addresses is relevant under this standard . . . The subpoenas to the ISP, therefore, are a proper use of discovery." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *4 (C.D. Ill. 2012). Here, it is likely Defendant knows who the infringer is or can provide Plaintiff with relevant information to aid Plaintiff in identifying the infringer.

### C. <u>The Court Has Provided Defendant with a Protective Order</u>

Defendant will not likely face any prejudice if Comcast complies with the subpoena because the Court has already taken procedural safeguards to protect Defendant. *See* CM/ECF 6. "Malibu is prohibited from initiating, directly or indirectly, any settlement communications with

the Doe Defendant whose identity has been revealed pursuant to the Subpoena or deposition described in paragraph 3 above. Any settlement communications shall be initiated only as approved by the Court." *Id*.

Further, this Court is allowing Defendant to proceed anonymously to avoid any risk of embarrassment or unwarranted association with the law suit. *See Id*. at *4 ¶ 4. And, Malibu Media has a policy of always allowing a Defendant to proceed anonymously who requests to do so. This Court should not prohibit Plaintiff from receiving Defendant's name when safeguards have already been put into place to protect Defendant from any embarrassment or risk of harm.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

Dated: May 1st, 2014

    Respectfully submitted,

    MALIBU MEDIA, LLC.
    PLAINTIFF

    By: /s/*Jon A. Hoppe*
    Jon A. Hoppe, Esquire #6479
    Counsel
    Maddox, Hoppe, Hoofnagle & Hafey, L.L.C.
    1401 Mercantile Lane #105
    Largo, Maryland 20774
    (301) 341-2580

## CERTIFICATE OF SERVICE

I hereby certify that on May 1st, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

    By: /s/*Jon A. Hoppe*